UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

FEB 18 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

Dennis A. Yaskowsky,

        Plaintiff,

v.                                Civil No. 4:19cv9

Phantom Eagle, LLC,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendant Phantom Eagle, LLC ("Defendant" or "Phantom Eagle"), pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. For the reasons stated below, Defendant's motion to dismiss is **DENIED**.

### I. FACTUAL BACKGROUND[1]

### A. Plaintiff's Employment with Defendant

Plaintiff Dennis Yaskowsky ("Plaintiff" or "Yaskowsky") is a retired Air Force Officer who was "hired to fulfill a logistics position" as part of a third-party contract at Langley Air Force Base ("Langley AFB") since September 2000. Compl. ¶¶ 6-7, ECF No. 1. From 2000 to 2013 the contract was awarded to various defense contractors, with Plaintiff remaining in his logistics position

---

[1] The facts recited here come from the Complaint and are assumed true only to decide the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

with each successive contract.  Id. ¶ 8.  In 2013, Phantom Eagle won the contract for a five-year term with a contract proposal that stated it would retain "100 percent of the . . . incumbent team."  Id. ¶ 9.

Plaintiff began his employment with Phantom Eagle on August 27, 2014, in the same role as Logistics/Communications Focal Point Manager that he had with prior contractors.  Id. ¶ 11.  Upon beginning his employment with Defendant, Plaintiff was required to take a pay cut of $47,985.60.  Id. ¶ 15.  Plaintiff's manager, Phantom Eagle employee Brian Echelle, told Plaintiff "he needed to 'take one for the team' because he was the oldest person[] on the contract and would be retiring soon anyway."  Id.  Plaintiff was 72 years old at the time.  Id. ¶ 16.  During Plaintiff's employment with Defendant, Mr. Echelle "repeatedly subjected [Plaintiff to] ageist remarks" such as "[s]uggesting that Mr. Yaskowsky retire because he was old" and "[r]eferring to Mr. Yaskowsky as 'old man.'"  Id. ¶ 17.

## B. Plaintiff's Medical Conditions

During his time in the Air Force, Plaintiff "developed spinal stenosis and paralysis of a back nerve" for which he had lumbar stabilization surgery in 1991.  Id. ¶ 18.  The surgery "largely mitigated the effects of his back injury," and he was discharged and issued a disability rating of fifty-two percent by the Air Force.  Id.  In approximately 2009, Plaintiff's back condition

2

"gradually began to deteriorate" which limited his range of motion and his ability to bend, lift, and walk. Id. ¶ 19.

In October 2014, Plaintiff had full knee replacement surgery. Id. ¶ 20. When he continued to experience pain beyond the expected six-week recovery period, he found out that he had a partially torn tendon in the same knee and underwent a second surgery on March 18, 2015. Id.

Around the same time as his second knee surgery, Plaintiff's back condition "began to dramatically worsen as the result of nerve compression in his spine," making him: unable to walk on an incline or climb stairs without assistance or support, increasingly reliant on a cane or rollator walker to walk, unable to lift anything over ten pounds, unable to bend over and pick up items without a grabber tool, and unable to dress without the assistance of his spouse. Id. ¶ 21. After consultation with his physician, Plaintiff was told "he would need a series of back injections, which could be followed by a spinal stabilization surgery." Id. ¶ 22. On October 20, 2015, Plaintiff received two steroid injections, but they "were unsuccessful in alleviating his pain." Id. ¶ 24.

In addition to the issues with his back, Plaintiff had partially successful cataract surgery on his right eye on November 19, 2015, which required an additional eye surgery. Id.

## C. Plaintiff's Request for Leave

On December 1, 2015, Plaintiff "requested 12 weeks of medical leave from Phantom Eagle's Office Manager, Debbie Gray, to take care of his various medical issues, primarily his deteriorating and painful back conditions." Id. ¶ 25. On or around December 10, 2015, Brian Echelle informed Plaintiff that Defendant "would not permit him the 12 weeks of medical leave that he had requested." Id. ¶ 28 (emphasis added). Instead, Mr. Echelle informed Plaintiff that Defendant "would approve six months of leave without pay to take care of his various medical issues and need for surgeries, whereupon Mr. Yaskowski would be able to return to his position as the Logistics/Communications Focal Point Manager." Id. Defendant "did not inform Mr. Yaskowky of his FMLA rights when he requested medical leave." Id. ¶ 29. At the time Plaintiff requested leave, he "did not know that the FMLA provided him a right to be restored to the same or equivalent position . . . but that his restoration rights expire[d] after twelve weeks of leave." Id. ¶ 30.

On December 10, 2015, Defendant's Program Administrator, Donald Gray, "spoke with Mr. Yaskowsky and confirmed that the Company would provide him six months of leave without pay to care for his medical issues." Id. ¶ 31. Mr. Gray then "emailed various members of Phantom Eagle's senior team" saying the same. Id. On December 11, 2015, Plaintiff replied to this email chain "to place

4

his 'formal request confirming LWOP starting 14 Dec[ember] 2015 for a period of 6 month[s] returning to work on 16 June 2016." Id. ¶ 32. In that same reply email, Plaintiff wrote that he understood that during the six months of leave he would "remain an employee of Phantom Eagle with the full intensions [sic] of returning to [his] position after [the six months]." Id. Robert Donze, the President of Phantom Eagle, then replied to Plaintiff's email the same day stating "[r]eceived. Approved." Id. ¶ 33. Plaintiff commenced his leave period on December 14, 2015. Id. ¶ 34.

In the twelve months of employment before Plaintiff's leave, Plaintiff "had worked at least 1,250 hours for Phantom Eagle." Id. ¶ 26. In addition, Plaintiff "worked at a location where Phantom Eagle had at least 50 employees within 75 miles." Id. ¶ 27.

## D. Plaintiff's Leave and Return

During his six month period of leave, Plaintiff "periodically updated Defendant regarding his health conditions," "continued paying his share of premiums under the Company's health insurance plan," "retained all I.D.'s and security clearances required," and "stopped by Langley AFB occasionally." Id. ¶¶ 39-40. On April 27, 2016, Mr. Donze, Defendant's President, "emailed Mr. Yaskowsky to inform him that his 'position duties will no longer be funded.' Mr. Yaskowsky did not receive that email because he did not have

access to his company email account during his medical leave."
Id. ¶ 44. On May 26, 2016, Plaintiff "had spinal surgery, which
required an inpatient hospital stay of five days." Id. ¶ 43.
Plaintiff also had a second eye surgery and received multiple
spinal injections during his leave. Id. ¶ 42. On June 6, 2016,
"Mr. Donze emailed Mr. Yaskowky at his personal email account and
notified him that "[e]ffective 6 June 2016, [his] position was no
longer available for rehire." Id. ¶ 45. However, Plaintiff
asserts that the contract Defendant was awarded at Langley AFB
that included Plaintiff's position was funded "for all positions
. . . until August 31, 2016." Id. ¶ 47. When Plaintiff attempted
to return to work on June 13, 2016, Mr. Echelle informed Plaintiff
that he "no longer had a position." Id.

On January 23, 2019, when Plaintiff filed his Complaint, he
stated that his back pain had "largely subsided as the result of
his back surgery." Id. ¶ 50. Plaintiff still had a "lifting
restriction of 20 lbs." Id. Plaintiff could not "climb or descend
stairs without using [a] railing" and he required "the use of a
cane when walking distances in excess of 100 feet." Id. Plaintiff
also required "the use of a grabber tool to retrieve items on the
ground, and he require[d] the assistance of his spouse to get
dressed for the day." Id. Plaintiff "has been assigned a 60
percent disability rating by the Department of Veterans Affairs
and handicap placards by the states of Florida and Virginia." Id.

6

## II. PROCEDURAL HISTORY

On January 23, 2019, Yaskowsky filed his Complaint against Phantom Eagle. The Complaint includes four counts: Count I alleges Age Discrimination pursuant to 29 U.S.C. §§ 621-634 ("The Age Discrimination in Employment Act"), id. ¶¶ 51-58; Count II alleges FMLA Interference pursuant to 29 U.S.C. §§ 2611-2619 ("The Family Medical Leave Act" or "FMLA"), id. ¶¶ 59-66;[2] Count 3 alleges Failure to Accommodate pursuant to 42 U.S.C. § 12101-12213 ("The Americans with Disabilities Act"), id. ¶¶ 67-73; and Count 4 alleges Wrongful Termination pursuant to The Americans with Disabilities Act, id. ¶¶ 74-84. Plaintiff attempted to serve the complaint on Defendant on March 11, 2019, ECF No. 2, but because of the security at Defendant's place of business, Defendant did not receive notice of the complaint until late March, ECF No. 10. Defendant subsequently filed an unopposed motion for an extension to file a responsive pleading on April 12, 2019, ECF No. 9, and such motion was granted on April 15, 2019. ECF No. 11.

On April 26, 2019, Defendant filed the now-pending Motion to Dismiss for Failure to State a Claim. ECF No. 12. The Motion and accompanying Memorandum, ECF No. 13 ("Memo"), primarily challenge Count II, arguing that Count II is time-barred, or alternatively, even if Count II is not time-barred: (1) that Defendant did not

---

[2] The Complaint lists 29 U.S.C. § 621 under Count II, however, 29 U.S.C. § 621 is a section of The Age Discrimination in Employment Act. The FMLA is located at 29 U.S.C. §§ 2611-2619.

have a duty to reinstate Plaintiff under the FMLA; and (2) even if there was a duty under the FMLA, Plaintiff was unable to return to work after twelve weeks.

Plaintiff filed his Response to Defendant's Motion on May 10, 2019. ECF No. 14 ("Resp."). Plaintiff argues that Count II is timely, that the doctrine of equitable estoppel should bar Defendant from arguing it had no duty to restore Plaintiff, and that Defendant is assuming facts not in the record to conclude that Plaintiff could not return to work after twelve weeks. Id. Alternatively, Plaintiff requests leave to amend his complaint to provide additional factual detail about his ability to return to work. Id. Defendant filed its Reply on May 16, 2019. ECF No. 15 ("Reply"). Having been fully briefed, the matter is ripe for review.[3]

### III. STANDARD OF REVIEW

The well-established Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not be detailed, the "[f]actual allegations must be enough to raise

---

[3] Due to internal recusals and transfers, this case was reassigned to the undersigned Judge on June 21, 2019.

a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted). Although the truth of well-pled facts is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Additionally, while it is generally not appropriate to consider the viability of affirmative defenses at the 12(b)(6) stage, in 'relatively rare circumstances' where all of the facts 'necessary to the affirmative defense

9

clearly appear on the face of the complaint,' an affirmative defense, including a defense seeking to demonstrate that a case is time-barred, may be resolved on a motion to dismiss." Waites v. Wells Fargo Bank, N.A., No. 2:15CV353, 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to ". . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." Id. (internal citations omitted).

## IV. DISCUSSION

### A. The FMLA's "Eligible Employee" Requirement

Pursuant to the FMLA, "an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position." Rodriguez v.

10

Smithfield Packing Co., 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)-(B)). In order to establish a claim for unlawful interference with FMLA benefits "an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." Id. at 516 (citations omitted). In addition, "[t]he employee also must prove 'that the violation prejudiced her in some way.'" Anderson v. Discovery Commc'ns, LLC, 517 F. App'x 190, 197 (4th Cir. 2013) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). "Such prejudice can be proven by showing that the employee . . . suffer[ed] some loss in employment status remediable through 'appropriate' equitable relief, such as employment, reinstatement, or promotion[.]" Id. at 198 (citations omitted).

An "eligible employee" under the FMLA is an employee who has been employed: "(i) for at least 12 months by the employer to whom leave is requested . . . ;" and "(ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).[4] The employee must also work at a worksite with more than 50 total employees, or, if the employee works at a

---

[4] The time from which the 1,250 hours is counted is the "commencement of the leave." See Butler v. Owens-Brockway Plastic Prods., Inc., 199 F.3d 314, 316 (6th Cir. 1999).

worksite with less than 50, the employer must have more than 50 total employees "within 75 miles of that worksite." 29 U.S.C. § 2611(2)(B).

Here, Defendant challenges Plaintiff's status as an eligible employee for the first time in its reply brief, arguing that it is "reasonable to infer that Plaintiff had not worked 1,250 hours" because "Plaintiff had a full knee replacement surgery in October, 2014, which required a six-week recovery period." Reply, at 8-9. Defendant also highlights that Plaintiff had a "second kne[e] surgery on March 18, 2015" as well as "steroid injections on October 20, 2015 and cataract surgery on his right eye on November 19, 2015." Id. (internal citations omitted).

First, the Court declines to consider such untimely argument, as it is well-settled that an argument not raised in an opening brief may be deemed abandoned. United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004). Moreover, Local Civil Rule 7 states that "[a]ll motions shall state with particularity the grounds" upon which the motion rests. E.D. Va. Loc. Civ. Rule 7(A) (emphasis added). This means that all of the grounds upon which the motion rests must be included in the initial motion. See Johns v. United States, No. 2:15CR24, 2019 WL 2092562, at *7 (E.D. Va. May 10, 2019) (finding that a claim raised for the first time in a reply brief was improper when the Rules Governing Section 2255 Proceedings for the United States District Courts indicate

12

that a § 2255 motion "must . . . specify all the grounds for relief available to the moving party."). The reason for such a rule is obvious: the non-moving party "will not have had an opportunity to respond to the new arguments." Plant Oil Powered Diesel Ful Sys., Inc. v. ExxonMobil Corp., No. CIV 11-0103 JB/WPL, 2012 WL 1132527, at *15 (D.N.M. Mar. 22, 2012).

Second, even if Defendant's argument was timely raised, assuming all well-pled facts to be true and drawing reasonable inferences in favor of Plaintiff, Plaintiff has sufficiently alleged that he satisfies the 1,250-hour requirement.[5] Plaintiff states in his complaint that he "had worked at least 1,250 hours for Phantom Eagle during the preceding twelve-month period." Compl. ¶ 26. In addition, there are no facts in Plaintiff's complaint suggesting that he is anything but a full-time employee, and he would have had to average only slightly more than twenty-four hours a week for fifty-two weeks in order to be eligible under the FMLA, well under a typical full-time workweek. Finally, Defendant's contentions that Plaintiff must have fallen short of the hour requirement because of his various health ailments are

---

[5] Plaintiff has alleged facts in support of the other requirements to qualify as an "eligible employee" as well: Plaintiff started work with Defendant in August 2014, over twelve months before leave was requested in December 2015, Compl. ¶ 11, and Plaintiff "worked at a location where Phantom Eagle had at least 50 employees within 75 miles," id. ¶ 27.

purely speculative, and improperly ask the Court to draw inferences in Defendant's favor.[6]

## B. The Statute of Limitations for an FMLA Interference Claim

Defendant's Motion to Dismiss and supporting Memo argue that Count II is time barred, and therefore must be dismissed. An FMLA interference claim "may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1) (emphasis added). However, if the claim is "brought for a willful violation . . . such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2) (emphasis added). "[T]he 'last event' constituting the alleged FMLA violation" must be identified to determine when a claim accrued. Barrett v. Ill. Dep't of Corr., 803 F.3d 893, 896 (7th Cir. 2015). A "reasonable reading of the statute" shows that there can be only one last event under § 2617(c)(1). Id. at 899. Therefore, this Court must determine which limitations period applies, and when the "last event" occurred.[7]

---

[6] For instance, the knee replacement referenced by Defendant that required a six-week recovery happened in October 2014, meaning that even if the surgery was on the last day of October 2014, at most only two of those recovery weeks would have fallen within the twelve months preceding Plaintiff's commencement of leave on December 14, 2015. Compl. ¶ 20.

[7] In order to succeed at the 12(b)(6) stage, Defendant must show that all of the facts necessary to its statute of limitations affirmative defense "clearly appear on the face of the complaint." Waites v. Wells Fargo Bank,

14

Here, Defendant offers no practical challenge as to whether Plaintiff alleges a willful violation, and for 12(b)(6) purposes, the Court therefore assumes a three year limitations period based on the state of the current record.[8] Rather than arguing that the violation was not willful, Defendant argues that the "last event" from which the statute of limitations began to run occurred more than three years before the complaint was filed. In support, Defendant argues that the statute of limitations began to run on December 10, 2015, the date that Plaintiff's request for twelve weeks of leave was denied. Memo at 9. In contrast, Plaintiff argues that the statute of limitations began to run on June 13, 2016, the date that Plaintiff attempted to return from leave and was discharged from his employment. Resp. at 5-6. Alternatively,

---

N.A., No. 2:15CV353, 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016) (emphasis added) (internal citations omitted).

[8] "Willful" is not defined in the FMLA, but federal courts often borrow from precedent defining such term under the Fair Labor Standards Act, which generally recognizes that a willful violation occurs when "the employer must have known that, or shown reckless disregard for whether, its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see Sampra v. U.S. Dep't of Transp., 888 F.3d 330, 333-34 (7th Cir. 2018). Here, Plaintiff alleges that his supervisor at Phantom Eagle repeatedly subjected him to ageist remarks and alluded to Plaintiff retiring because of his advanced age. Compl. ¶ 17. Plaintiff further alleges that he was not informed of his FMLA rights when he asked for qualifying leave, that he was affirmatively convinced to take leave longer than the FMLA period, and that Defendant attempted to terminate him shortly after the expiration of the twelve week FMLA period without any prior notice. Compl. ¶ 28-31, 47. Plaintiff, therefore, has pled specific facts and inferences that, when interpreted in his favor, plausibly state a willful violation. Cf. Bosse v. Baltimore Cty., 692 F. Supp. 2d 574, 584 (D. Md. 2010) (finding, at the summary judgment stage, that the jury must determine whether the defendants willfully interfered with plaintiff's FMLA rights by, among other things, expressly discouraging the plaintiff from using his leave).

15

Plaintiff argues that the statute of limitations began to run on March 8, 2016, which is when a 12-week FMLA leave period would purportedly have ended based on the fact that Plaintiff began his leave on December 14, 2015. Id. at 5. The Fourth Circuit has not considered this particular issue, and there is a Circuit split over which event qualifies as the "last event" for an FMLA interference claim.

A review of caselaw suggests that federal circuits have adopted conflicting rules as to whether an employee's termination acts as the "last event" for an FMLA interference claim, at least in cases involving a "progressive absentee policy" whereby the employee receives negative marks on his or her record for each absence. For example, in Barrett v. Ill. Dep't of Corr., the plaintiff was fired in 2010 per a policy that allowed her employer to fire an employee after twelve unexplained absences. 803 F.3d 893, 894-95 (7th Cir. 2015). The plaintiff had accumulated twelve absences between 2003 and 2010 but she claimed, in her 2012 lawsuit, that three of the absences, the last being in 2005, were medical absences protected by the FMLA. Id. After each of these three absences, the plaintiff argued in hearings before the defendant's employee review board that the absences should be "excused" for medical reasons, but she lost each time. Id. Despite this history of formal proceedings held to contest her absences, and the plaintiff suffering numerous reprimands for

absences throughout her employment, the plaintiff did not make an FMLA claim at any point before 2012 when she filed her lawsuit. Id. at 895. On these facts, the Seventh Circuit held that the plaintiff's FMLA interference claims were time barred because "[w]hen an FMLA plaintiff alleges that [her] employer violated the Act by denying qualifying leave, the last event constituting the claim ordinarily will be the employer's rejection of the employee's request for leave." Id. at 897 (emphasis added). In reaching such conclusion, the Seventh Circuit explained that an FMLA plaintiff must prove both the impairment of his or her protected right and "resulting prejudice," and while the Plaintiff in Barrett happened to suffer reprimands and "paper suspensions," as a result of her absences, the "real prejudice" was the classification of her past absences as "unauthorized," (rather than excused absences in light of the FMLA). Id. at 896-97, n.5. Ultimately concluding that the plaintiff's years-old denials of leave could not support her 2012 FMLA claim, the Seventh Circuit explained the plaintiff's position was "really a plea for a tolling rule that would hold the limitations period in abeyance indefinitely and revive a stale denial-of-leave claim years later, when the employee is fired based in part on [an earlier] contested absence." Id. at 899 (emphasis added).

In a similar case also involving a "progressive absentee policy," a district judge from this Circuit largely agreed with

17

<u>Barrett's</u> holding and found that the plaintiff's FMLA interference claim was time barred because:

> [i]n essence, [the plaintiff's] claim is one for denial of leave. [The plaintiff] was last denied FMLA leave in December of 2013. It was not until over a year [after the plaintiff's last denial of leave] that [the defendant] terminated [plaintiff's] employment due to [his] tardiness and unexcused absences <u>unassociated with his previous requests for FMLA leave</u>. Thus, <u>under the facts of this case</u>, the last event for the purpose of determining the statute of limitations was the last denial of leave and not [his] ultimate termination. As explained in <u>Barrett</u>, to hold otherwise would allow FMLA claims stemming from wrongful denial of leave <u>where the employer has a progressive absenteeism policy</u> to be brought years after the last denial of leave when the employee is terminated, <u>regardless of whether the denial of leave precipitated the termination</u>. This is particularly salient <u>in the present case</u> considering [plaintiff's] termination occurred over a year after the last alleged FMLA violation.

<u>Fugate v. Frontier W.V., Inc.</u>, 304 F. Supp. 3d 503, 507 (S.D.W. Va. 2018)(emphasis added)(internal citations omitted). In both of the above cases, the decision to designate the last denial of leave as the "last event" appears to have been dictated largely by the type of absentee policy the defendants employed, as well as questions regarding the strength of the link between the termination and the long-prior alleged denials of FMLA leave. While both <u>Barrett</u> and <u>Fugate</u> adopt the date of the last "denial of leave" as the "last event," both cases also suggest either that the stated rule is the "ordinary rule" or that such rule is applicable so long as the case-specific facts warrant applying such rule.

18

Turning next to the cases cited by Plaintiff, while these cases appear to support application of a differing rule for determining the "last event" (to include in situations involving a progressive absentee policy), they too place significant emphasis on the need to carefully assess the case-specific facts. In a case with similar facts to Barrett, the Sixth Circuit stated that the "[p]laintiff's termination was the [last event] in this case, because it was the first action serious enough to warrant plaintiff's resort to the legal system." Butler v. Owens-Brockway Plastic Prods., Inc., 199 F.3d 314, 317 (6th Cir. 1999) (emphasis added). In Butler, the plaintiff had accrued the designated number of absences resulting in termination over only a year-and-a-half period and had suffered no reprimands before her termination. Id. at 315-16. The Sixth Circuit found that the date of termination appropriately served as the "last event" because to hold otherwise would force plaintiffs "to bring suit each time they are assessed a negative mark on their absentee record, but before this mark results in probation, termination, failure to reinstate, or other adverse action," meaning federal courts would be inundated with "premature claims." Id. at 317. (emphasis added).

A judge of the District Court of Maryland agreed with Butler in a case that did not involve a progressive absentee policy (and thus is more akin to the case pending before this Court). Sparenberg v. Eagle All., No. JFM-14-1667, 2016 U.S. Dist. LEXIS

19

13447, at *2 (D. Md. Feb. 4, 2016). In Sparenberg, the plaintiff claimed that after returning from FMLA leave his employer both interfered with his FMLA rights, and retaliated against him for exercising his FMLA rights, because: (1) he was removed from his post and transferred to a different assignment in April 2012; and (2) he had his salary reduced in June 2013. Id. Considering the case-specific record, the district court concluded that because the facts demonstrated that the new assignment and reduction in salary were "linked" to each other and had a causal connection to the plaintiff's FMLA absence, "the last event constituting the alleged violation," was the "reduction in salary." Id. at *3.[9]

Considering the case law cited above and comparing the facts in the instant matter to such cases, this Court concludes that Defendant has failed to demonstrate either that: (1) the "last event" for an FMLA interference claim is necessarily the date of the last denial of leave; or (2) that the facts necessary to prove that the "last event" fell outside of the three year limitations period "clearly appear on the face of the complaint." Waites,

---

[9] In a case decided three years before Sparenberg, a different judge of the District Court of Maryland found that "the last event constituting the alleged violation of the FMLA was . . . when [the plaintiff] was last denied leave." Marshall v. Donahue, No. 12-cv-0431, 2013 U.S. Dist. LEXIS 21224, at *9 (D. Md. Feb. 15, 2013). However, in Marshall, the complaint was filed in 2012 and the plaintiff had not alleged any events that interfered with her FMLA rights after 2007. Id. at *2-3. As the five year period between an alleged violation and the complaint's filing even exceeded the three year statute of limitations period for a willful violation, there was no analysis devoted to the question of why the court chose the denial of leave as the last event.

20

2016 WL 659084, at *2. For one, the events here, the leave request and Plaintiff's termination, have a strong factual "link" like the events did in Sparenberg where the latter factually linked event was held to be the "last event." Notably, this case does not involve a "progressive absentee policy," which was a key fact when the plaintiffs' claims were found to be time barred in Barrett and Fugate. This case also does not involve a plaintiff reaching back to years-old prior absences and drawing a tenuous link between the previous denial of FMLA leave and the termination to try and revive a stale claim, as the plaintiffs attempted in Barrett and Fugate.

Unlike the concerns in Barrett and in Fugate, and consistent with the concerns raised in Butler, this Court finds that the case-specific facts of this matter, as currently alleged, raise significant concern that the initial denial of leave in this case was not "serious enough" for Plaintiff to turn to the courts for resolution. Stated differently, it remains an open question as to whether Plaintiff suffered "prejudice" at the time his leave was denied because he did not receive a negative mark of any kind on his employment record. Barrett, 803 F.3d at 896 (an FMLA interference plaintiff "must show some impairment of his rights and resulting prejudice"). In fact, he did not even receive notice from his employer, written or otherwise, informing him that he was not eligible for FMLA leave. Rather, Plaintiff was convinced to take more time off than he had requested, which may have actually

21

been preferable to him under the circumstances as he would have even more time to arrange for his various medical procedures, and arguably had no reason to feel aggrieved, let alone to resort to formal judicial procedures.

In addition to the above, unlike the cases involving progressive absentee policies, here, Plaintiff has alleged that Defendant interfered with his FMLA rights by "[f]ailing to reinstate" him under 29 C.F.R. § 825.220(b), Compl. § 62, and the date that his entitlement to reinstatement under the FMLA expired was <u>within the three year limitations period</u>. Moreover, § 825.220(b), the regulation cited by Plaintiff in his complaint, states that interference also includes "manipulation" on the employer's part to avoid FMLA responsibilities. 29 C.F.R. § 825.220(b). Unlike in <u>Fugate</u>, where the court saw the case as essentially one of "denial of leave," <u>Fugate</u>, 304 F. Supp. 3d at 507, Plaintiff here has argued that his rights may have been interfered with at least until March 8, 2016, when a twelve week FMLA protected leave period would have expired, because Defendant <u>never fulfilled its duty to notify him</u> that his rights expired after twelve weeks. Resp. at 5. Stated differently, Plaintiff's facts, taken as true, plausibly allege that his employer essentially "waited out" the twelve week FMLA period <u>without ever informing Plaintiff</u> that his FMLA rights were being depleted with each passing day.

Therefore, accepting as true all of the factual allegations contained in the Complaint and drawing all reasonable inferences in favor of Plaintiff, it is not clearly apparent from the alleged sequence of facts here that the "last event" had to be the denial of leave in December of 2015 as Defendant has argued. Instead, Plaintiff has plausibly alleged that the "last event" could have been: (1) the expiration of the FMLA period in March of 2016; or (2) the date of the notice of termination, which the record suggests was attempted in April of 2016, but not successfully communicated until June of 2016. As such, for purposes of this Motion to Dismiss, the Court will assume that the "last event" here was one of the alleged events that took place within three years of the suit's filing on January 23, 2019. Because Defendant has failed to carry its burden at the 12(b)(6) stage, the motion to dismiss Count II on limitations grounds is **DENIED.**[10]

## C. Equitable Estoppel

Next, Defendant argues that, even if the FMLA interference claim is timely, it must be dismissed because Plaintiff <u>did not</u> return to work after twelve weeks. Memo at 9. "Following

---

[10] The Court's holding does not foreclose Defendant from later arguing that the litigated facts demonstrate that the "last event" is the December denial of leave and that the statute of limitations bars the FMLA claim. However, because the Court is mandated to accept Plaintiff's well pled facts as true, it is not clearly apparent that the last event should be the date of the denial of leave, particularly when Plaintiff has advanced a viable theory that Defendant offered him additional leave in an effort to interfere with his FMLA rights, a fact he did not discover until he was terminated.

23

expiration of the twelve week [FMLA-protected] period, [the defendant] ha[s] no responsibility to restore the plaintiff to her prior position." Miller v. Personal-Touch of Va., Inc., 342 F. Supp. 2d 499, 515 (E.D. Va. 2004); see also Wallace v. Rite Aid Corp., C.A. No. PJM 10-2190, 2012 WL 366896, at *3 (D. Md. Feb. 1, 2012) ("Once Wallace's FMLA leave expired, Rite Aid was entitled to treat him as they would any other employee and hold him responsible for coming to work."). Plaintiff responds to such argument by asking that Defendant "be equitably estopped from asserting that [Plaintiff] waived his restoration rights under the FMLA" by not returning to work after twelve weeks, Resp. at 6, because Defendant's failure to disclose FMLA protections and its mischaracterization of Plaintiff's leave led him to accept Defendant's offer of six months of leave without knowing "that his [FMLA] restoration rights expired after twelve weeks," Compl. ¶¶ 63-64. Stated another way, it is Plaintiff's contention that Defendant, rather than Plaintiff, is directly responsible for Plaintiff's failure to return to work within twelve weeks of the date his leave began.

"The Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility, but several other circuits and at least one district court within the Fourth Circuit have done so." Schmidt v. Town of Cheverly, Md., GJH-13-3282, 2014 WL 4799039, at *6 (D. Md. Sept. 25, 2014) (citing cases from the Second, Third,

Fifth, and Sixth Circuits and deeming it proper to reach the merits of an FMLA equitable estoppel claim); see also Blankenship v. Buchanan Gen. Hosp., 999 F. Supp. 832, 838 (W.D. Va. 1998) (applying equitable estoppel in the FMLA context). In other contexts, the Fourth Circuit has held that "[e]quitable estoppel 'arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.'" Bakery & Confectionery Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1027 (4th Cir. 1997) (quoting Black v. TIC Inv. Corp., 900 F.2d 112, 115 (7th Cir. 1990)). "Reliance on the misrepresentation is reasonable only if the party asserting estoppel does not or should not know the truth." Id. (citing Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59-60 n.10 (1984)). Given the purpose of equitable estoppel,[11] the fact that other district courts within the Fourth Circuit have applied it in the FMLA context, and Defendant's lack of argument against its application

---

[11] Equitable estoppel is a remedy by which a party "is precluded, because of some improper action on his part, from asserting a claim or defense, regardless of its objective validity." David K. Thompson, Equitable Estoppel of the Government, 79 Colum. L. Rev. 551, 552 (1979). "Specifically, it is applied against a person whose words or conduct have induced another to act or refrain from action in a manner that has resulted in harm or loss or would do so if the responsible person is not estopped." Id. It is to be "used with care and in the sound discretion of the court only when required 'to promote the ends of justice.'" Id. (internal citations omitted). When applying this remedy, "courts must ascertain not only that the factual situation justifies use of estoppel, but also that the party seeking estoppel deserves the benefit of the remedy." Id.

25

in the FMLA context,[12] the Court will apply it at the 12(b)(6) stage of this case.

The Western District of West Virginia applied equitable estoppel in a case with facts similar to those in this case, and that court's reasoning is instructive here. Blankenship, 999 F. Supp. at 833-34, 837-39. In Blankenship, the defendant's personnel director told the plaintiff that her FMLA leave period ended a week later than it actually did, and then fired her when she reported on the date she was told to return by the director. Id. at 838-39. There, equitable estoppel was deemed to be "well-suited" to the plaintiff's claims, as she: (1) reasonably relied on the defendant's "misrepresentation concerning a crucial date"; (2) secured clearance from her doctor to return on the date she was told by the personnel manager; and (3) was dismissed for not reporting to work a week earlier than she was told. Id. at 838.

Here, Plaintiff was similarly told by Defendant to report back to work on a date after his FMLA protected leave period had expired, but was fired when he did so. Moreover, the case-specific facts here establish that Plaintiff originally requested only twelve weeks of leave and that he only agreed to a longer period of leave after Defendant denied his request and presented the

---

[12] Defendant states that "[t]he Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility," citing Schmidt, 2014 WL 4799039, but then addresses the merits of Plaintiff's equitable estoppel claim rather than arguing for its inapplicability in the FMLA context. Reply, at 4-5.

longer alternative. Compl. ¶ 25. Such facts reveal that Plaintiff fully intended to return to work within twelve weeks, but took longer only after Defendant presented the six month "alternative" leave period as the sole option available to Plaintiff if he wanted time off to address his medical conditions. Further, Defendant failed to notify Plaintiff of the FMLA or his rights and responsibilities under it, id. ¶¶ 29-30, as required by law, so Plaintiff did not know that his FMLA protections expired after twelve weeks at the time he accepted Defendant's alternative. See 29 C.F.R. § 825.300(b)(1) ("When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."); 29 C.F.R. § 825.300(c)(1) ("Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.").[13]   As such, the inference that most logically follows from the facts as pled in the complaint is that Plaintiff

_____

[13] The failure to inform Plaintiff of his rights is a critical distinction from cases where a plaintiff is informed that his or her FMLA rights will expire after twelve weeks, but is given "discretionary leave" from the employer beyond the FMLA period.   See, e.g., Eklind v. Cargill Inc., No. CIV. 3:07-CV-89, 2009 WL 2516168 (D.N.D. Aug. 14, 2009).   In such scenario, if the plaintiff is terminated after the twelve week FMLA period but before expiration of the additional "discretionary" leave period, there would be no basis for equitable estoppel in association with an FMLA claim.

intended to address his medical issues and return to work after twelve weeks, but instead reasonably relied to his detriment on Defendant's "alternative" offer of six months leave without pay, as he accepted the six months leave and was fired before the six month period expired.[14] As Plaintiff has sufficiently pled facts that make out the elements of an equitable estoppel argument, Defendant's motion to dismiss Count II, because Plaintiff did not return to work within twelve weeks, is **DENIED**.[15]

## D. Plaintiff's Ability to Perform Essential Job Functions

Defendant separately argues that because Plaintiff was physically unable to return to work after twelve weeks of leave

---

[14] The Fourth Circuit stated in Bakery & Confectionery Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co., that "[r]eliance on the misrepresentation is reasonable only if the party asserting estoppel does not or should not know the truth." 118 F.3d 1018, 1027 (4th Cir. 1997). Plaintiff alleges that he "did not know that the FMLA provided him with a right to be restored to the same or equivalent position . . . but that his restoration rights expire[d] after twelve weeks of leave." Compl. ¶ 30. Defendant challenges this notion in a footnote in its Reply arguing that Plaintiff must have had notice of the FMLA because he had previously taken multiple periods of medical leave. Reply, at 7 n.3. First, there is nothing in the complaint demonstrating that Plaintiff's previous leave periods were under the FMLA. Second, Defendant is asking the Court to make improper inferences in its favor. While the Court acknowledges that it is coincidental that Plaintiff originally requested twelve weeks of leave—the exact time frame protected by the FMLA—without knowing that was the statutorily protected time frame, taking the well pled allegations on the face of the complaint as true and weighing inferences in favor of Plaintiff, Plaintiff's reliance here was reasonable.

[15] The Court again notes that facts developed during the course of litigation may no longer support an argument for equitable estoppel. See, e.g., Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 557-58 (6th Cir. 2009) (dismissing the plaintiff's equitable estoppel argument on summary judgment based on a failure of proof of detrimental reliance). However, taking Plaintiff's well pled facts as true as the Court is required to do at this stage, the Court is denying Defendant's motion at this stage.

and perform the essential functions of his job, he has no right to restoration under the FMLA. Memo at 10-11. Under the FMLA, "[i]f an employee is unable to 'perform an essential function' of her job 'because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.'" Holmes v. E. Spire Communs., Inc., 135 F. Supp. 2d 657, 665 (D. Md. 2011) (citing 29 C.F.R. § 825.214(b)). Defendant supports its contention that Plaintiff was unable to return to work by pointing out that, after beginning his leave, Plaintiff had a second eye surgery, multiple spinal injections, and a back surgery that required a five day hospital stay and a three month lifting restriction. Memo at 11. Defendant also cites the physical limitations Plaintiff was experiencing since March 2015 as a result of his deteriorating back condition—the limitations that led to his May 26, 2016 back surgery—as evidence that he could not return to work after twelve weeks. Id. Plaintiff argues that Defendant is reading "inferences into [Plaintiff's] complaint that simply do not exist," and that: (1) he could have returned to work within twelve weeks; and (2) had he known that he only had twelve weeks of protected leave, he would have arranged his medical procedures differently to have only taken that amount of leave. Id. at 8-9.

Assuming all well-pled facts in the complaint are true, the most reasonable inference in this case is that Plaintiff originally

requested only twelve weeks of leave because he believed that would
be enough time to complete his medical procedures and return to
work prepared to perform his job's essential functions. The Court
agrees with Plaintiff's assertion that, "[w]hat most logically
follows" from Plaintiff's request for twelve weeks of leave is
that "he was able to complete his medical procedures and return to
work within a [twelve]-week period, but when his employer gave him
six months of leave instead of the three he requested, the medical
procedures that he required were scheduled with less urgency."
Resp. at 9-10. Cf. Vanoy v. Fed. Reserve Bank of Richmond, 827
F.3d 296, 302 (4th Cir. 2016) (discussing the fact that prejudice
supporting an FMLA interference claim "may be gleaned from evidence
that had the plaintiff received the required (but omitted)
information regarding his FMLA rights, he would have structured
his leave differently."). In addition, the short amount of time
Plaintiff had between his back surgery and his return to work—
Plaintiff had back surgery on May 26, 2016 and returned to
Defendant's office prepared to reassume his position on June 13,
2016, id. ¶¶ 43, 46—further supports Plaintiff's argument.
Finally, although Defendant cites to Plaintiff's physical
limitations before the surgery as proof he could not have returned
at the end of twelve weeks, Plaintiff states that "he was already
working with great physical limitations" but "[t]he sedentary

nature of his job . . . permitted him to work with those limitations." Resp. at 9.

Drawing all reasonable inferences in favor of Plaintiff and accepting the well-pled facts in the complaint as true, Plaintiff has alleged that he could have returned to work and performed his essential job functions within twelve weeks. Defendant's citation to Holmes to argue otherwise is ineffective because in that case the plaintiff herself said in deposition testimony that she would not have been able to return to work and perform her essential job functions within twelve weeks. 135 F. Supp. 2d at 665-66. No such facts appear in the complaint here, and a reasonable inference supports the opposite conclusion. Therefore, Defendant's motion to dismiss the FMLA interference claim, because Plaintiff would have been physically unable to perform his job's essential functions after twelve weeks, is **DENIED**.[16]

## E. The Remaining Counts

Finally, Defendant's motion to dismiss makes a broad request that the complaint be dismissed in its entirety. Memo at 4. The Court notes, however, that none of the arguments presented by Defendant in its Motion or Memo appear to contest the sufficiency

---

[16] Plaintiff alternatively requested leave to amend the complaint in order to demonstrate that he could have returned to work and performed his essential job functions after twelve weeks. Resp. at 10. As Defendant's motion is denied, Plaintiff's request for leave to amend the complaint is moot.

31

of any of Plaintiff's non-FMLA claims. Therefore, to the extent the motion attacks any of the other counts, such motion is **DENIED**.

## V. CONCLUSION

For the reasons stated above, Defendant's 12(b)(6) motion is **DENIED**. Counsel are instructed to contact the undersigned Judge's calendar clerk to schedule a 16(b) conference as soon as practicable. The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

_____
/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 18 , 2020